# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 2, 2022          Decided May 27, 2022

No. 21-1165

EUGENE C. ROSS,
APPELLANT

v.

SECURITIES AND EXCHANGE COMMISSION,
APPELLEE

On Appeal of an Order of the
Securities and Exchange Commission

*Stephen M. Kohn* argued the cause for appellant. With him on the briefs were *David K. Colapinto* and *Kayla Svihovec*.

*John R. Rady*, Attorney, U.S. Securities and Exchange Commission, argued the cause for appellee. With him on the brief were *Dan M. Berkovitz*, General Counsel, *John W. Avery,* Deputy Solicitor, and *Stephen G. Yoder*, Senior Litigation Counsel.

Before: HENDERSON, ROGERS and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Eugene Ross appeals a United States Securities and Exchange Commission (SEC or Commission) order denying his application for a whistleblower award resulting from a successful SEC enforcement action. He contends that he voluntarily provided original information to the SEC that led to the successful enforcement action as set forth by the governing statute, 15 U.S.C. § 78u-6(b)(1), but that the Commission erroneously rejected his award application based on its improper definitions of key statutory terms, *see* 17 C.F.R. § 240.21F-4(a) (defining "[v]oluntary submission of information"), (b) (defining "[o]riginal information").

We disagree. The SEC properly denied Ross's award application, which was based on information submitted to the Commission before July 21, 2010. The Congress expressly and unambiguously excluded from the definition of "original information" submissions provided to the Commission before this date, the statute's date of enactment. 15 U.S.C. § 78u-7(b); *see id.* § 78u-6(a)(3). Because Ross fails to satisfy the statutory requirements for "original information," we need not address his challenge to the SEC's definition of "voluntary." Accordingly, we affirm the order.

## I.  Background

Appellant Eugene Ross was a broker for Bear Stearns Companies, Inc. from 2002 until 2005, when he was terminated for his role in the events leading to this case. In September 2004, he discovered what he suspected were violations of various anti-fraud provisions of the federal securities laws perpetrated against his client by Amerindo Investment Advisors, Inc. (Amerindo), which at the time was clearing its trades through Bear Stearns, and by two of its executives. Ross immediately provided evidence of the suspected fraud to his

client, who confirmed that she had not authorized the questioned transactions. Ross and his client confronted the Amerindo executives, who denied any wrongdoing, and Ross also notified his supervisors at Bear Stearns. According to Ross, his Bear Stearns supervisors neither investigated nor reported the alleged violations to the government. He then advised his client to hire an attorney to pursue the matter. She did so and reported the suspicious activity and information provided to her by Ross to the United States Department of Justice (DOJ) and the SEC.

To this point, Ross had no direct contact with any government agency and did not report to or discuss with the government Amerindo's alleged securities violations. That changed in June 2005 when an Assistant United States Attorney requested to meet with Ross through his employer to discuss the allegations against Amerindo. Nothing in the record suggests that Ross was subpoenaed or otherwise compelled to comply with the request. Ross met with DOJ and SEC attorneys later that month and disclosed the evidence of Amerindo's violations and Ross's efforts to document and report them to Bear Stearns. He continued to meet with DOJ and SEC attorneys several times between 2005 and 2008 and testified in the criminal prosecution of the Amerindo executives.

The Commission filed a civil enforcement action against Amerindo and its two senior executives in June 2005, alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934 (Exchange Act) and the Investment Advisers Act of 1940. The SEC amended its complaint a few months later to allege additional securities law violations but, before the end of the year, the district court ordered a stay of discovery in the civil action during the pendency of the criminal proceedings. After the two executives were convicted

on several counts of fraud in 2008, proceedings in the civil action resumed in 2010 and the Commission filed a second amended complaint. In 2011, Ross submitted his formal whistleblower disclosures to the Commission, "incorporat[ing] by reference all the 'original information' voluntarily provided by Ross since his discovery of the fraud." Appellant's Br. 13. In May 2014, the district court entered final judgment in the civil action in favor of the SEC and ordered Amerindo and the individual defendants to pay approximately $100 million in disgorgement, prejudgment interest and civil penalties.

Following the successful enforcement action, the SEC Office of the Whistleblower published a Notice of Covered Action regarding the Amerindo proceeding and invited claimants to submit whistleblower award applications. Ross filed a timely application for an award. The SEC's Claims Review Staff (CRS) examined Ross's award claim and issued a preliminary determination denying it. Joint Appendix (J.A.) 477. The CRS reasoned that (1) Ross "did not voluntarily provide original information to the Commission as defined by" Exchange Act Rule 21F-4(a), J.A. 477; *see* 17 C.F.R. § 240.21F-4(a); (2) Ross's submissions in 2005 through 2008 did not constitute "original information" as defined in Exchange Act Rule 21F-4(b) because he submitted them before July 21, 2010, when the governing statute was enacted, J.A. 477; *see* 17 C.F.R. § 240.21F-4(b)(1)(iv); and (3) Ross's disclosures, including the 2011 filings, "did not lead to" the successful enforcement action as required by Exchange Act Rule 21F-4(c), J.A. 477; *see* 17 C.F.R. § 240.21F-4(c).

Ross then challenged the CRS's preliminary determination by submitting a timely written response to the SEC as permitted by 17 C.F.R. § 240.21F-10(e). He argued that a whistleblower satisfies the statute's "voluntariness" requirement, 15 U.S.C. § 78u-6(b)(1), by disclosing evidence of a securities law

violation to the victim who then relays the information to the Commission. J.A. 484–91, 485 ("In regard to 'voluntary submissions,' the inquiry must center on whether or not the 'original information' about the fraud was 'voluntarily' disclosed by the whistleblower to the client."). In the alternative, Ross urged the Commission to waive the "voluntariness" requirement under 15 U.S.C. § 78mm(a)(1), given his "extraordinary circumstances." J.A. 497–500. He maintained that the statutory definition of "original information" does not require the disclosure to be submitted after the date of the statute's enactment as set forth in the implementing regulation. J.A. 491–95; *see* 15 U.S.C. § 78u-6(a)(3); 17 C.F.R § 240.21F-4(b)(1)(iv). And he claimed that his disclosure led to the successful enforcement action because it formed "the basis of SEC critical filings in 2012 through 2014." J.A. 495–97.

Taking up Ross's challenge, the SEC first concluded that Ross's submission did not meet the "voluntariness" requirement because he did not submit his evidence directly to the Commission until after he received a request from the government and he did not act jointly with his client when she disclosed the information to the SEC. J.A. 504–05 (citing 15 U.S.C. § 78u-6(a)(6) (defining "whistleblower" as "any individual who provides, or 2 or more individuals *acting jointly* who provide, information relating to a violation of the securities laws to the Commission" (emphasis added))). The SEC rejected Ross's alternative argument and declined in its discretion to waive the "voluntariness" requirement because doing so would conflict "with the statutory purpose of incentivizing whistleblowers to come forward early rather than waiting for authorities to 'come knocking on the door.'" J.A. 506 (citation omitted). Second, the Commission determined that information provided before the statute's enactment is not "original information" because the statute excludes from the

definition information provided before July 21, 2010. J.A. 506–07. It followed the Second Circuit's reasoning in *Stryker v. SEC*, 780 F.3d 163 (2d Cir. 2015), which upheld the exclusion of information provided to the SEC before July 21, 2010, from the definition of "original information." *Id.* at 164, 167. The Commission rejected Ross's contention that the United States Supreme Court's decision in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 781–82 (2018), which held that the statutory definition of "whistleblower" was "clear and conclusive," had any bearing on the definition of "original information." J.A. 507. Third and finally, the SEC held that Ross's 2011 filings did not, as the SEC staff stated, "contribute in any way to the Commission's original complaint . . . nor the Commission's first amended complaint" and they "did not impact, affect, or contribute in any way to the Commission's [second amended complaint] . . . or any other efforts by the Commission after the filing of the original complaint." J.A. 508 (quotation marks omitted). Accordingly, the Commission denied Ross's whistleblower award application.

## II. Analysis

### A.

The SEC had jurisdiction to consider Ross's whistleblower award application pursuant to 15 U.S.C. § 78u-6(b). We have jurisdiction of the appeal under 15 U.S.C. § 78u-6(f) and 17 C.F.R. § 240.21F-13 ("A determination of whether or to whom to make an award may be appealed within 30 days after the Commission issues its final decision to the United States Court of Appeals for the District of Columbia Circuit."). Whistleblower award determinations "shall be in the discretion of the Commission," 15 U.S.C. § 78u-6(f), and may be set aside if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

Where, as here, the Congress has delegated rulemaking authority to the Commission under the Exchange Act, its regulations interpreting "voluntary" and "original information" are reviewed under the familiar two-step framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See* 15 U.S.C. § 78u-6(j) (SEC "shall have the authority to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section consistent with the purposes of this section"); *id.* § 78w(a)(1) (SEC "shall . . . have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of" the Exchange Act). "Under *Chevron* review, we first assess whether the statute directly speaks 'to the precise question at issue' so as to foreclose (or compel) the agency's interpretation." *SoundExchange, Inc. v. Copyright Royalty Bd.*, 904 F.3d 41, 55 (D.C. Cir. 2018) (quoting *Chevron*, 467 U.S. at 842). If it does, "we 'must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Chevron*, 467 U.S. at 843). If it does not, "we defer to the agency's resolution of the statute's ambiguity as long as its interpretation is reasonable." *Id.*

**B.**

"Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) [(codified in scattered sections of the U.S. Code)], the Congress created a whistleblower award program that provides monetary incentives to individuals with knowledge of securities violations to assist the government in identifying and prosecuting the violations." *Doe v. SEC*, 28 F.4th 1306, 1311 (D.C. Cir. 2022) (per curiam); *see Digital Realty*, 138 S. Ct. at 773–74. Under the Act, the Commission is authorized to give monetary awards to "whistleblowers who voluntarily provided original information to the Commission that led to the

successful enforcement of the covered judicial or administrative action" and that "results in monetary sanctions exceeding $1,000,000." 15 U.S.C. § 78u-6(a)(1), (b)(1). The Congress further authorized the Commission "to issue such rules and regulations as may be necessary or appropriate to implement" the whistleblower program and provided it the discretion to determine "whether, to whom, or in what amount to make awards." *Id.* § 78u-6(f), (j); *see Digital Realty*, 138 S. Ct. at 775.

"Following Dodd-Frank's enactment and a notice-and-comment period, the SEC accordingly adopted final rules to implement the whistleblower program." *Doe*, 28 F.4th at 1312 (citing Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300 (June 13, 2011)). The promulgated rules define "[v]oluntary submission of information," "[o]riginal information" and when information "leads to successful enforcement," each of which is statutorily required for award eligibility. 17 C.F.R. § 240.21F-4(a), (b), (c). Thus, a claimant's failure to satisfy any one of these statutory requirements dooms his whistleblower award application. *See* 15 U.S.C. § 78u-6(b)(1).

The Dodd-Frank Act first requires a whistleblower award applicant to "voluntarily" provide original information to the SEC. *Id.* The statute, however, does not define "voluntarily." Acting pursuant to its delegated rulemaking authority, *id.* § 78u-6(j), the SEC issued Rule 21F-4(a) providing that a whistleblower's submission is considered voluntary if submitted "before a request, inquiry, or demand that relates to the subject matter of [the] submission is directed to" the whistleblower or his attorney by, *inter alia*, the Commission, 17 C.F.R. § 240.21F-4(a)(1)(i).

The Act next requires whistleblower submissions to the SEC to contain "original information." 15 U.S.C. § 78u-6(b)(1). It defines "original information" as information that (1) "is derived from the independent knowledge or analysis of a whistleblower"; (2) "is not known to the Commission from any other source, unless the whistleblower is the original source of the information"; and (3) "is not exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, unless the whistleblower is a source of the information." 15 U.S.C. § 78u-6(a)(3)(A)–(C). The associated Rule 21F-4(b), which also defines "original information," includes a fourth requirement: the information must have been "[p]rovided to the Commission for the first time after July 21, 2010," the date of Dodd-Frank's enactment. 17 C.F.R. § 240.21F-4(b)(1)(iv).

Ross challenges the Commission's interpretation of "voluntary" and "original information."

## C.

Turning to the Commission's interpretation of "original information" in Exchange Act Rule 21F-4(b), we first examine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. In doing so, "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 & n.8 (1984) (citing cases). We follow this "cardinal rule" because "the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citations omitted).

10

As explained, § 78u-6(a)(3) of the Exchange Act lists three requirements in its definition of "original information."[1] 15 U.S.C. § 78u-6(a)(3). But this is not the only provision of Dodd-Frank addressing "original information." The very next section involves the "[i]mplementation and transition provisions for whistleblower protection." *Id.* § 78u-7. It requires that the Commission "shall issue final regulations implementing the provisions of section 78u-6," *id.* § 78u-7(a), and its subsection covering "original information" instructs:

> Information provided to the Commission in writing by a whistleblower shall not lose the status of original information (as defined in section 78u-6(a)(3) of this title, as added by this subtitle) solely because the whistleblower provided the information prior to the effective date of the regulations, *if the information is provided by the whistleblower after July 21, 2010.*

*Id.* § 78u-7(b) (emphasis added). Although this subsection includes in the definition of "original information" submissions made after the date of Dodd-Frank's enactment but before the effective date of the SEC's implementing regulations, it expressly *excludes* information submitted before July 21, 2010. By citing directly to the "original information" definition in § 78u-6(a)(3), it makes crystal clear that the Commission, in crafting its implementing regulations, must exclude this

---

[1] There is no dispute that Ross satisfies each of the three requirements: (1) the information was "derived from [his] independent knowledge [and] analysis"; (2) Ross was "the original source of the information"; and (3) the information was not "derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media." 15 U.S.C. § 78u-6(a)(3)(A)–(C).

category of submissions from the definition of "original information." The SEC did just that in Exchange Act Rule 21F-4(b). Contrary to Ross's contention, the SEC did not "alter[] a term defined by the statute" or "improperly add[] a fourth requirement to the definition." Appellant's Br. 44. It adhered to the Congress's express command by defining "original information" to include the three requirements of § 78u-6(a)(3) and the additional timing requirement of § 78u-7(b).[2] *See* 17 C.F.R § 240.21F-4(b)(1)(i)–(iv). Read in tandem, these two statutory provisions are sufficient for us to conclude under *Chevron* Step 1 that the Congress has indeed spoken directly and unambiguously to the precise question at issue and the SEC followed this directive to the letter.[3] *Cf. Stryker*, 780 F.3d at 166–67 (declining to decide whether Congress spoke unambiguously to issue and concluding Commission's interpretation in Rule 21F-4(b)(1)(iv) "was reasonable and entitled to deference" under *Chevron* Step 2).

---

[2]  The Commission was consistent throughout the rulemaking process that its definition of "original information" include, as mandated by the statute, the requirement that the information be submitted after Dodd-Frank's enactment date. *See* Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, 75 Fed. Reg. 70,488, 70,492 n.20 (proposed Nov. 17, 2010); Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300, 34,310 n.94 (June 13, 2011).

[3]  Section 78u-7(b)'s exclusion of information submitted before July 21, 2010, contrasts with the very next provision of § 78u-7, which expressly extends award eligibility to whistleblowers who report *violations* that "occurred *prior to* July 21, 2010," 15 U.S.C. § 78u-7(c) (emphasis added), as long as the whistleblowers come forward after this date. The contrast is further evidence that the Congress's timing restriction on "original information" was no accident, given that it knew how to provide for retrospective application where it wanted to.

The statute, therefore, "compel[s]" the Commission's interpretation. *SoundExchange*, 904 F.3d at 55.

Ross insists that our and the SEC's conclusion is foreclosed by the Supreme Court's holding in *Digital Realty*. It is not. There, the Court invalidated the Commission's interpretation of the term "whistleblower," which would have allowed an individual to qualify as one under Dodd-Frank's anti-retaliation protections without providing information to the SEC, because it conflicted with the statutory definition. 138 S. Ct. at 775–78 (explaining that "the term 'whistleblower' in § 78u-6(h) [(the anti-retaliation provision)] carries the meaning set forth in the section's definitional provision"); *see* 15 U.S.C. § 78u-6(a)(6) (defining "whistleblower" and requiring submission of "information relating to a violation of the securities laws *to the Commission*" (emphasis added)). Here, unlike in *Digital Realty*, Rule 21F-4(b) does not conflict with the statutory definition of the term in question—namely, § 78u-6(a)(3)'s "original information." The Rule complies with it. *See* 17 C.F.R. 240.21F-4(b)(1)(i)–(iii) (incorporating the three statutory requirements set forth in § 78u-6(a)(3)(A)–(C)). The fourth requirement—that information be submitted after July 21, 2010—also complies, rather than conflicts, with the Act because § 78u-7(a) and (b) explicitly direct the Commission to supplement the definition of "original information" in § 78u-6(a)(3) with this requirement. *See* 17 C.F.R. § 240.21F-4(b)(1)(iv). Ross urges us to look only at § 78u-6(a)(3) and ignore § 78u-7(b). To do so, however, would contravene the Supreme Court's instruction that we "are not at liberty to dispense with [a] condition . . . Congress imposed." *Digital Realty*, 138 S. Ct. at 777. Ross's reliance on *Digital Realty* is therefore misplaced, as the Court's holding there has no bearing on other provisions of the Dodd-Frank Act that expressly instruct the SEC on the implementation of certain statutory definitions.

Ross first provided information to the Commission about the Amerindo securities violations between 2005 and 2008. His formal whistleblower disclosures submitted in 2011 incorporated this same information by reference and "all of the information contained in the filing was already known to the government." Appellant's Br. 29. Because Ross provided information to the SEC before July 21, 2010, his submissions do not qualify as "original information" as defined by the Congress in the Dodd-Frank Act.

As Ross fails to satisfy one of the statutory requirements for whistleblower award eligibility, we need not address his challenge to the Commission's interpretation of "voluntary" set forth in 17 C.F.R. § 240.21F-4(a) or its denial of Ross's request to exempt him from the requirement that the information be submitted voluntarily.

For these reasons, the SEC's order is affirmed.

*So ordered.*